GEORGE PADOW AND YETTA PADOW, Petitioners, v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Padow v. Commissioner
Docket No. 7601-83.
United States Tax Court
T.C. Memo 1987-250; 1987 Tax Ct. Memo LEXIS 249; 53 T.C.M. (CCH) 837; T.C.M. (RIA) 87250; May 12, 1987. William Grogan, for the petitioners. John McDougal, for the *250 respondent. DRENNEN
MEMORANDUM FINDINGS OF FACT AND OPINION DRENNEN, Judge: Respondent determined deficiencies in petitioners' Federal income tax and additions to tax as follows: Income Tax
Addition to Tax
Year
Deficiency
Sec. 6653(b) [1]
1972
$11,209.26
$5,604.63 1973
13,650.59
6,825.30
1974
10,565.15
5,282.58
The issues for decision are: (1) whether petitioner George Padow (George), [2] is liable for the additions to tax for fraud under section 6653(b) for taxable years 1973 [3] and 1974; [4] (2) whether the assessment and collection of any taxes and additions to tax for taxable years 1973 and 1974 is barred by the statute of limitations; and (3) whether petitioners are entitled to average their income for 1972, 1973 and 1974 based on the taxable income reported on their Federal income tax returns for base years 1968, 1969, 1970, and 1971. *251 FINDINGS OF FACT At the time of filing of their petition, petitioners resided in Richmond, Virginia. Beginning in 1945 or 1946 and continuing through the years in issue, George owned and operated as a sole proprietorship a grocery store in Richmond, Virginia known as George Padow Market and George's Superette (the market). The business was incorporated on July 14, 1975. Petitioners also owned numerous rental properties during the years in issue. Petitioners' 1968, 1969, 1970 and 1971 Federal income tax returns reported the following: 1968
1969
1970
1971
Adjusted Gross Income
$13,934.00
$13,137.94
$29,706.02
$20,421.19
Taxable Income
5,994.00
3,996.33
22,388.00
13,445.98
Income Tax Liability
1,280.00
894.86
5,272.76
3,206.50
Petitioners' 1964 Federal income tax return was audited by the Internal Revenue Service Audit Division. No changes were proposed as a result of this audit. Petitioners' 1970 return was initially selected for audit, but a determination was made by the Internal Revenue Service to send it back to the Service Center without audit. Respondent conducted a criminal investigation of petitioners' 1972, 1973 and 1974 *252 returns. George cooperated with respondent's special agents by answering questions, producing documents in his possession not previously destroyed and by providing access to his bank records. Books and records of the market consisted of a notebook in which weekly sales and purchases were recorded, bank statements, deposit tickets, cancelled checks and various business bills. A large portion of the bank statements, cancelled checks and business bills were missing. The only documentation for market receipts and expenditures submitted to respondent was the notebook in which weekly sales and purchases were recorded. George threw away all cash register tapes after he recorded the sales in the notebook. No purchase invoices were made available during the investigation. The notebook provided to respondent's special agent contained no entries for the period September 25, 1974, through December 31, 1974. The record contains no explanation for the missing entries. Petitioners' records also included a rent receipt book in which monthly rental receipts produced by petitioners' real estate holdings were recorded. However, this book contained records relating only to that portion of petitioners' *253 rental properties with respect to which George collected rents. No records on the remaining properties, managed by local real estate agents, were made available to respondent's special agent by George. [5]
Respondent reconstructed petitioners' net worth from information obtained from petitioners and their bank, and determined their taxable income for each of the years here involved from increases in net worth plus nondeductible expenditures. Petitioners do not contest the accuracy of respondent's net worth statement attached to and made a part of respondent's statutory notice of deficiency. On their 1972 return petitioners reported gross receipts or sales from the grocery business of $165,436.87, less cost of goods sold of $145,240.01 for a gross profit of $20,196.86. On their 1973 return they reported gross sales of $209,653.00, cost of good sold of $188,330.00, and gross profit of $21,323.00. On their 1974 return gross sales were reported as $214,637.00, cost of *254 goods sold as $187,338.00, and gross profit of $27,299.00. Based on respondent's net worth computations, which petitioners accept as reasonably accurate, petitioners understated their taxable income for 1972, 1973, and 1974 by $30,960.37, $33,056.10 and $25,762.06, respectively. Based on these figures, respondent determined deficiencies in petitioners' tax liabilities in the amounts of $11,209.26, $13,650.59 and $10,565.15 for the years 1972, 1973, and 1974, respectively. Petitioners offered no evidence to dispute respondent's computation of their tax liabilities, and we find them to be correct unless petitioners qualify for income averaging. During the criminal investigation, George told respondent's special agent that he gave Mrs. Valeria Lepp, petitioners' tax preparer, all of his personal and business records to enable her to prepare petitioners' Federal income tax returns for 1972, 1973 and 1974. However, Mrs. Lepp was in fact given only summary figures of various tax items that she then incorporated into petitioners' Federal income tax returns. George did not give Mrs. Lepp any documentation to support petitioners' income or deductions and she did not ask for any. Her *255 task was to prepare the returns from the figures George gave her. During the criminal investigation, George also told respondent's special agent that he made no payments to his sons, other than salary payments, and that he never loaned money to any individual nor made any payments on behalf of any individual. However, petitioners do not now dispute that, during the years in issue George made loans to his son, Ezra Padow, totalling approximately $15,500; also that in June of 1974, George purchased 200 shares of Virginia Electric and Power Company stock for each of his two sons at a total cost to George of $4,010. George paid life insurance and automobile insurance premiums for his sons during each of the years 1972, 1973 and 1974 in the respective total amounts of $617.83, $1,124.23 and $468.50. George was the defendant in a criminal case, United States v. George Padow,[6] (Eastern District of Virginia, 1979) wherein he was charged with attempting to evade and defeat Federal income taxes due for 1972, 1973 and 1974 in violation of Code section 7201. [7] On March 16, 1979, George pleaded guilty to the charges against him relating to 1972 in exchange for which the government *256 dropped the charges for 1973 and 1974. George concedes he is estopped from denying the applicability of the addition to tax for fraud and his liability for the addition imposed by section 6653(b) for taxable year 1972. OPINION The first issue is whether George is liable for the additions to tax for fraud under section 6653(b). For purposes of section 6653(b), fraud is an intentional wrongdoing with a specific intent to evade a tax believed to be owed. , cert. denied ; , affd. . The existence of fraud *257 is a question of fact to be resolved upon consideration of the entire record. ; , affd. in an unpublished opinion . The burden of proof is on respondent to prove fraud by clear and convincing evidence. Section 7454(a); Rule 142(b). Fraud is not to be imputed nor presumed. ; . Because direct proof of fraudulent intent is seldom available, respondent may show requisite intent from the conduct of the taxpayer and the surrounding circumstances. ; . Respondent recites the following factors which he argues establish George's fraudulent intent: (1) the filing of false Federal income tax returns for three consecutive years; (2) George knew the returns were false when filed because he acquired assets and paid liabilities far in excess of the income he reported; *258 (3) maintenance of inadequate records and George's destruction of the daily cash register tapes which were the only means of verifying the weekly sales figures which were used as the basis of the figures reported on the tax returns; (4) false and misleading statements made by George to respondent's investigating agents; and (5) George's conviction for income tax evasion for 1972 as persuasive evidence that petitioners' false returns for 1973 and 1974 were also filed with intent to evade tax. For the reasons set forth below, we find respondent has met his burden of establishing fraud for each of the years in issue by clear and convincing evidence. Petitioners' failure to report substantial amounts of income over a number of years is effective evidence of fraudulent intent. See ; , affg. . Respondent's net worth statement, the accuracy of which petitioners concede, establishes that petitioners' Federal income tax returns for 1972, 1973, and 1974 understated taxable income by $30,960.03, $33,056.17 and $25,762.06, respectively. *259 Petitioners' income tax liability was thereby substantially understated by 83 percent in 1972, 81 percent in 1973 and 74 percent in 1974. Petitioners do not deny that they understated their taxable income but claim that it was the product of George's negligence and lack of business acumen. Petitioners assert that George possessed only a seventh grade education, had no business or accounting training and that "his financial records were always sloppily kept and therefore disorganized." Respondent persuasively rebuts petitioners' contention that George unknowingly filed false returns by establishing that petitioners acquired assets and/or paid outstanding liabilities far in excess of the income they reported on their Federal income tax returns. For example, in 1973, when petitioners reported $19,528 of adjusted gross income, they purchased over $30,000 of securities. In 1974, when petitioners reported $21,877.44 of adjusted gross income they purchased over $20,000 of real estate and paid off loans and notes or other liabilities totalling $16,500. We find it difficult to imagine that George did not knowingly understate his income in light of the glaring discrepancies between petitioners' *260 level of expenditures and reported income. Further evidence of George's fraudulent intent consists of his destruction of the cash register receipts, the only documents which could be used to substantiate income derived from the market. It is also troubling that the records George gave to respondent were in many respects incomplete. The incompleteness of petitioners' records also support an inference of fraud. ; affd. without published opinion . The notebook in which weekly sales and purchases were recorded was missing all entries for a four-month period during 1974. No explanation for the four-month hiatus was given. In addition, records relating to petitioners' rental property were also incomplete. Those provided to respondent contained only the rental properties managed by George and failed to include records relating to properties managed by local real estate agents. Respondent also argues that the false statements made by George are also evidence of fraud. See , *261 affg. a Memorandum Opinion of this Court. George told respondent's agents that he supplied all records to Mrs. Lepp to enable her to prepare his Federal income tax returns and that during the years in issue he made no payments, other than salary, to his sons. Both statements were incorrect, but may or may not have been made with a fraudulent intent. Without knowledge of the phraseology used in the questions asked, it is difficult to determine whether the answer was justified. The agent who asked the questions did not testify. We accept petitioners' argument that George cooperated with the agent during the investigation and made no effort to hide or conceal anything and that this mitigates against an intent to evade tax. We also recognize that George was somewhat lacking in education and may not have understood the full requirements of the tax laws. But the fact remains that George's only apparent sources of income were from the grocery store, his rental properties and some investments, and that in order to pay for the assets he acquired during the years 1972-1974 and pay his living expenses he had to have considerably more income from those sources than he reported on his returns. *262 He claims no non-taxable source of income. We also note that despite a notable increase in his grocery store business due to a new highway going through the area in 1971, George did not report much increase in taxable income. Finally, respondent urges that George's fraudulent intent is evidenced by his conviction of income tax evasion for 1972 together with his testimony given before the United States District Court relative to his reasons for pleading guilty thereto. Petitioners argue that neither George's conviction nor his guilty plea indicates a fraudulent intent on his part to evade tax because his decision to plead guilty for charges in 1972 was motivated by concern over the additional burden that would be placed on petitioners' health and a desire to reduce "family embarrassment." Furthermore, petitioners argue they first approached the government in the criminal proceedings with a plea of nolo contendere for 1972 but that the government refused to dismiss charges for 1973 and 1974 unless George pled guilty to the 1972 charges. We understand that petitioners' explanation may have some credence. But evidence of prior or subsequent bad acts is relevant to prove intent *263 or state of mind where the prior or subsequent acts are part of a pattern. ; . Specifically, a prior conviction of criminal tax evasion for the first of a pattern of three years in which income was substantially understated is evidence of fraudulent intent with respect to the remaining two years. . [8] This is particularly true here when there was no apparent variation in petitioners' manner of conducting his business or in keeping accurate financial records for the years 1972, 1973 and 1974.
Before accepting George's plea, the district court questioned George's motives as follows: Q: Has anyone made any promises to you to induce you to plead guilty other than that which was encompassed in counsel's statement to the effect that the Government will not prosecute you on charges that they may feel that they have for the years, I believe, 1973 and 1974; have there been any other promises? *264 A: No, sir. Q: Anybody suggest to you if you plead guilty the court would be more lenient in its punishment? A: No, sir. Q: Has anyone threatened you in any way to induce you to plead guilty? A: No, sir. Q: Mr. Padow, are you guilty of what is charged herein, did you do this? A: Yes, sir. Q: And is that why you are pleading guilty, because you are in fact guilty? You did file a false return for the purposes of evading the payment of tax? A: Yes, sir. Q: And are you satisfied, after going over it with Mr. Sager, that the Government can prove the charge? A: Yes, sir. Q: All right. Is that the reason you are pleading guilty, because you are guilty and they can prove it? A: Yes, sir. George's testimony given before this Court as to his motives for pleading guilty in the criminal proceeding contradicts his testimony given before the United States District Court. The conflict quite naturally causes us to question the integrity of George's testimony generally. George admitted to having willfully evaded his full income tax liability for 1972. While George has made no such admission with respect to taxable years 1973 and 1974, he has given us no indication that *265 his motives for understating petitioners' taxable income in 1973 and 1974 were any different than that which motivated him to do so in 1972. In light of the foregoing, we find that respondent has proved by clear and convincing evidence that petitioners' returns for 1973 and 1974 were false or fraudulent with intent to evade tax. Accordingly, George is liable for additions to tax under section 6653(b) as set forth in respondent's notice of deficiency. The next issue is whether assessment of the deficiencies for 1973 and 1974 is barred by the statute of limitations. The three-year statute of limitations provided in section 6501(a) had expired with respect to both 1973 and 1974 by the time respondent mailed the statutory notice of deficiencies. However, an exception to the above limitation is found in section 6501(c)(2) which provides that the tax may be assessed at any time in the case of a willful attempt to defeat or evade tax, such as that found in section 6653(b) addition to tax for fraud. While we deplore respondent's delay in completing his investigation in this case and then delaying almost four years after the criminal conviction in mailing the notice of deficiency, nevertheless, *266 having found George liable for additions to the tax under section 6653(b), we find the assessment of tax owing for petitioners' 1973 and 1974 taxable years, together with additions to tax for fraud under section 6653(b), is not barred by the statute of limitations. The final issue is whether petitioners should be allowed to use income averaging to reduce the deficiencies determined against them by respondent. Sections 1301 through 1304 provide a favorable method of computing the tax for taxable income if the year in question exceeds by at least $3,000, 120 percent of average taxable income for the four preceding "base period" years period. Petitioners have the burden of proving that their taxable income for the four base years was correctly reported. ; Rule 142(a). Petitioners have offered no evidence, other than their own testimony, that the income reported for petitioners' base period years, 1968 through 1971, was accurate. The Court has held that filed tax returns, even when accompanied by testimony attesting that they were filed correctly, are not themselves competent evidence of the truth of the amounts reported. *267 ; , affd. . To the contrary, petitioners' own testimony tends to invalidate the validity of their base period income tax returns. Petitioners state that George "was not a good bookkeeper, and his financial records were always sloppily kept and therefore disorganized." (Emphasis added.) They have therefore established that the inadequate bookkeeping system, which petitioners argue resulted in the understatement of income, transcended taxable years 1972, 1973 and 1974. Petitioners have failed to prove that their Federal income tax returns for 1968 through 1971 were more reliable than the returns filed for 1972 through 1974, which petitioners concede do not accurately represent their taxable income. Accordingly, petitioners are not entitled to average their income within the meaning of section 1301 et seq. Decision will be entered for the respondent.
Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954, as amended, and in effect during the years in issue. All Rule references are to the Tax Court Rules of Practice and Procedure.↩
2. Respondent does not seek additions to tax for any of the taxable years in question from petitioner Yetta Padow. ↩
3. George conceded the fraud issue for 1972. ↩
4. At the close of respondent's opening statement at trial respondent rested his case based on the pleadings, stipulations and exhibits, whereupon petitioners moved for a "directed verdict." Petitioners later characterized their motion as one for summary judgment. Rule 120(b); Rule 121. We reserved judgment on petitioners' motion. At issue is whether respondent carried his burden of proving fraud based solely on the pleadings, stipulations and exhibits presented by the parties. Because most, if not all, of the elements of respondent's case were encompassed in the stipulations and exhibits, and fraud is an issue of fact, we deny petitioners' motion for summary judgment. However, we caution respondent that resting its case on its pleadings and stipulations in an action for civil fraud should be reserved for only rare circumstances. This Court would have been interested in knowing some of the details of how George's business was conducted and would have been in a better position to determine George's intent had more facts been brought out. Yet neither counsel asked George any questions along that line while he was on the witness stand as petitioners' witness.↩
5. There is nothing in the record to indicate whether the rentals reported on the returns were complete and accurate although the returns reported the income and expenditures for each rental property separately.↩
6. Petitioner Yetta Padow was not named in the criminal case. ↩
7. SEC. 7201. ATTEMPT TO EVADE OR DEFEAT TAX. Any person who willfully attempts in any manner to evade or defeat any tax imposed by this title or the payment thereof shall, in addition to other penalties provided by law, be guilty of a felony and, upon conviction thereof, shall be fined not more than $10,000, or imprisoned not more than 5 years, or both, together with the costs of prosecution.↩
8. See also .↩