T.C. Memo. 1995-573


UNITED STATES TAX COURT


STEVEN H. TOUSHIN, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket No. 21724-92.          Filed November 30, 1995.


<u>Angelo Ruggiero</u> and <u>Michael R. Esposito</u>, for petitioner.

<u>Karen P. Wright</u> and <u>Donna C. Hansberry</u>, for respondent.


MEMORANDUM OPINION

DEAN, <u>Special Trial Judge</u>:  This case was assigned pursuant to section 7443A(b)(4) of the Code and Rules 180, 181, and 183.[1]

---

[1]All Rule references are to the Tax Court Rules of Practice and Procedure.  All section references are to the Internal Revenue Code as amended and in effect during the years in issue.

The case is before the Court on petitioner's motion for partial summary judgment filed March 10, 1995, pursuant to Rule 121.

Respondent determined deficiencies in petitioner's Federal income tax and additions to tax as follows:

|  |  | Additions to Tax | |
| Year | Deficiency | Sec. 6653(b) | Sec. 6661 |
| 1980 | $25,265 | $16,983 | -- |
| 1981 | 34,220 | 25,018 | -- |
| 1982 | 21,196 | 10,598 | $5,299 |

The statutory notice in this case was issued on July 1, 1992. Petitioner's motion is directed only to the deficiency and additions to tax determined under the notice for the year 1982. The "normal" 3-year statute of limitations under section 6501(a) has expired for taxable year 1982. Based upon the allegations in respondent's amended answer, the deficiency and additions to tax determined by respondent for the year 1982 may only be assessed if the "fraud" exception of section 6501(c)(1) applies. In his motion, petitioner alleges that based upon the affidavits submitted, the facts stipulated by the parties, and the pleadings and attachments thereto, respondent as a matter of law cannot meet her burden of proving fraud, and the Court must enter summary judgment in favor of petitioner for the year 1982.

For the reasons set out below, we find that there is a genuine issue of material fact as to whether there is an understatement of tax due to fraud with respect to petitioner's tax return for the year 1982.

## Background

The facts set forth below are based on the stipulation of facts with attached exhibits, first supplemental stipulation of facts with attached exhibits, and the affidavits submitted by the parties.[2]

Petitioner resided in Chicago, Illinois, at the time the petition in this case was filed.

Operation of the Businesses

From May of 1978 through December of 1982 petitioner was president and owner of 100 percent of the stock of Entertainment & Amusement, Inc., an Illinois corporation (hereinafter referred to as E & A of Illinois). E & A of Illinois operated a business known as the Bijou Theatre, located in Chicago, Illinois. The Bijou Theatre exhibited movies, sold video cassettes, and beginning in 1981, sold other items in the lobby of a building located on North Wells Street in Chicago.

On October 1, 1981, a business by the name of Entertainment & Amusement, Inc. was incorporated in the State of California (E & A of California). E & A of California changed its name to

---

[2]On April 11, 1995, 2 days prior to the hearing on this motion, respondent filed a response to petitioner's reply to respondent's objection to petitioner's motion for partial summary judgment, attaching an affidavit from Special Agent James McGuire and a transcript of the record of the proceedings in United States v. Toushin, No. 87 CR 206-1 (N.D. Ill. verdict rendered October 27, 1988), reversed and remanded 899 F.2d 617 (7th Cir. 1990). We have not found it necessary to rely on the transcript submitted by respondent in reaching our decision on this motion.

Savage Management, Inc. (Savage) on September 1, 1982. On corporation papers filed with the State, the president of E & A of California and later of Savage was listed as Walter Killeen. Two hundred shares of stock of E & A of California were issued in the name of Walter Killeen on August 10, 1982.[3] E & A of California, and subsequently Savage, operated under the name of "The Screening Room".[4]

From May 1981 through March of 1982, checking account number 332-232 in the name of Walter Killeen Company was maintained at Oak Trust & Savings Bank (Oak Trust) in Chicago. Petitioner was, along with Walter Killeen, a signatory on this account.[5] From 1978 through the year 1982 petitioner also maintained his personal checking account, number 501-344, at Oak Trust.[6]

Petitioner was a signatory on other Oak Trust checking accounts held in the names of E & A of Illinois, Toushin &

---

[3]On the Savage Form 1120, U.S. Corporation Income Tax Return, filed May 31, 1983, there are attached schedules declaring petitioner to be the sole shareholder of the reporting corporation for fiscal year ending September 30, 1982. See infra note 11.

[4]Fictitious Business Name Statements were filed with the San Francisco County Superior Court first by E & A and then by Savage.

[5]Based upon a visual examination of copies of canceled checks that are exhibits stipulated by the parties, all the checks written on this account appear to be signed by petitioner.

[6]The parties have stipulated and attached as exhibits copies of bank statements, cancelled checks, deposit slips, and associated miscellaneous items for this account for the years 1978 through 1982.

Company, Real Estate Management, Gold Distribution Company, and Walter Killeen Company.[7]

In addition to the various Oak Trust accounts, petitioner was signatory on a checking account in the name of Anthony J. Medina, Jr. Co. at Northern Trust Company in Chicago and for part of the year 1982 had signature authority on a checking account in the name of Toushin & Company at Chemical Bank in New York City.[8]

Petitioner's Cash Transactions

On his individual Federal income tax return, Form 1040, filed for the year 1982, petitioner reported income from wages, capital gains from the sale of films, and rental income.[9]  During 1982, E & A of Illinois loaned $11,110 in cash to petitioner. The parties have stipulated that "petitioner wrote no checks to cash" during 1982, cashed no salary checks during that year, and "received no cash back on deposits" in 1982.

Despite the apparent paucity of sources of cash, during the year 1982 petitioner came into possession of relatively large amounts of currency.  He deposited $3,260 in cash into his

_____

[7]The parties have stipulated copies of various bank records as exhibits associated with these respective checking accounts.

[8]The parties have stipulated copies of various bank records as exhibits associated with these respective checking accounts.

[9]We have determined from the stipulation that petitioner's wages were paid by check.  Since petitioner has raised no argument to the contrary, for purposes of this motion, we will assume that the other income items reported on the return were also paid by check.

personal checking account, $2,100 in cash into the Walter Killeen checking account, and currency in the amount of $12,285 into the Anthony J. Medina, Jr. Co. account. In addition, petitioner made various expenditures of cash for personal items during 1982, and purchased with currency 232 personal money orders totaling $82,477.89 from Oak Trust[10].

Of the 232 personal money orders purchased by petitioner during the year 1982, 65 money orders totaling $29,585.51 were used to pay expenses of Savage, and another 49 were deposited into accounts of Savage Management, Inc. With the exception of a de minimis amount, the funds deposited into the Walter Killeen Co. account during 1981 and 1982 were used to pay expenses of Savage. Also, with the exception of a de minimis amount, the funds deposited in the Northern Trust account in the name of Anthony J. Medina, Jr. Co. in 1981 and 1982 were used to pay expenses of Savage.

The Criminal Investigation and Subsequent Proceedings

Sometime in the year 1982, petitioner came under investigation by the Criminal Investigation Division of the IRS.

---

[10]The parties have stipulated as an exhibit a copy of a document containing pages pertinent to the year 1982. The pages are separately titled, "Personal Money Orders Purchased With Cash By Steven Toushin At The Oak Bank and Trust" and "Personal Money Orders Purchased With Cash By Steven Toushin At The Oak Bank and Trust [,] Handwriting Examined". Also stipulated are exhibits consisting of photocopies of money orders and other associated materials.

On January 6, 1983, Special Agents of the IRS served petitioner with a subpoena related to the investigation.

On May 31, 1983, Savage (formerly E & A of California) filed a Form 1120, U.S. Corporation Income Tax Return, for the fiscal year ending (FYE) September 30, 1982.  Petitioner signed the return as "Pres."[11]  Included in the gross receipts reported on the return of Savage were all currency and money order deposits to the Killeen and Medina accounts[12] and all expenditures by money order for corporate expenses[13].

On March 23, 1987, petitioner was indicted in the United States District Court for the Northern District of Illinois on 3 counts of violations of section 7206(1).[14]  In the indictment, petitioner was accused of filing false individual income tax returns which understated his taxable income for each of the

---

[11]Petitioner dated his signature as 6/1/83.  On Schedule J of the return, line H(2) indicates that an individual or entity owns 100% of the voting stock of Savage, the reporting corporation.  Also attached to the return is a schedule entitled, "Other Business Deductions" on which it is noted that the individual with 100% ownership of Savage voting stock is "Steven Toushin".  The record contains no documentation on the change of corporate presidency or nominal ownership of Savage stock from Mr. Killeen to petitioner.

[12]Reported gross receipts of Savage also included deposits of money orders into various bank accounts at the "Hibernia Bank" held in the name of either E & A of California or Savage.

[13]The corporate expenses were deducted at the appropriate place on the Form 1120.

[14]United States v. Toushin, No. 87CR206-1 (N.D. Ill. filed Mar. 26, 1987).

years 1980, 1981, and 1982.  After a jury trial, petitioner was convicted on all counts.  He appealed his convictions, see United States v. Toushin, 899 F.2d 617 (7th Cir. 1990), and the case was reversed and remanded by the Court of Appeals.

On August 8, 1991, petitioner signed a "Plea Agreement" with the Government.  In the agreement he acknowledged that during the year 1980 he received income from skimming cash proceeds from E & A of Illinois.  Petitioner further acknowledged that he knew he was required to report as income, but knowingly did not include, the skimmed proceeds on his joint individual tax return for the year 1980.  The District Court accepted petitioner's plea, entered judgment against him on count one and dismissed counts two and three concerning the years 1981 and 1982.

In her notice of deficiency, respondent determined that petitioner had unreported income for the years 1980, 1981, and 1982 attributable to funds diverted from E & A of Illinois.  Further, respondent affirmatively alleges in her amended answer that petitioner in all 3 years received and fraudulently failed to report income in the form of "diverted receipts or, in the alternative, constructive dividends" from E & A of Illinois.

## Discussion

### Arguments Of The Parties

In support of his motion for partial summary judgment, petitioner argues that, as a matter of law, respondent cannot

show fraud for the year 1982 because: (a) Respondent cannot show an understatement of tax for the year;[15] and (b) if there is an understatement of tax, respondent cannot show that it is due to petitioner's fraud.

Of the $101,838 total cash expenditures ascribed to him in 1982, petitioner argues that $57,981 was from sources reported on his return, leaving respondent with $43,857 of "excess" expenditures to treat as unreported income.[16] He relies on the filing of the Savage return in 1983 to explain the source of these funds. Petitioner argues that the "correct" analysis requires that the amounts reported on Savage's return be "removed" from respondent's cash expenditures analysis for 1982. Petitioner then would have nontaxable sources in excess of cash expenditures. Respondent can prove that petitioner understated his income in 1982, "only if respondent can persuade this Court that petitioner, and not Savages [sic] or even Entertainment & Amusement, Inc., should have reported the cash", contends petitioner.

---

[15]Although this argument is raised in the "Relevant Facts" portion of petitioner's motion rather than that part denominated "Law and Argument", we shall, nevertheless, treat it as if it were legal argument.

[16]The cash expenditures respondent computed for petitioner include the deposits to the Killeen and Medina accounts and cash expenditures for money orders which were reported on Savage's FYE 9/30/82 return.

Petitioner further argues that even if the Court is persuaded that he understated his income, reporting the income on the Savage return negates, as a matter of law, fraudulent intent on his part.

Respondent's argument in reply does not address petitioner's allegation that there is no understatement of tax. She frames the question to be decided solely as an issue of intent. According to respondent, there is a genuine issue of material fact as to petitioner's fraudulent intent in filing his 1982 Form 1040. Since intent is at issue, respondent concludes that the matter is not appropriate for summary judgment.

Standard for Granting Summary Judgment

The standard for granting a motion for summary judgment under Rule 121 is stated in the rule itself.

> A decision shall * * * be rendered if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law. * * * [Rule 121(b).][17]

The moving party has the burden of "showing" the absence of a genuine issue as to any material fact. See Espinoza v. Commissioner, 78 T.C. 412, 416 (1982) and cases cited therein.

---

[17]Rule 121 is derived from Fed. R. Civ. P. 56. Therefore, authorities interpreting the latter will be considered by the Court in applying our Rule. Espinoza v. Commissioner, 78 T.C. 412, 415-416 (1982).

In <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986), the Supreme Court described the "showing" that must be made by the moving party:

> a party seeking summary judgment always bears the initial responsibility of informing the * * * court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. * * *

In <u>Celotex</u>, the Supreme Court held that the moving party in a summary judgment action need not in all cases introduce evidence negating an essential element of the opponent's claim in order to prevail on the motion. If the moving party, after adequate time for discovery, can make a "showing" from the record of "a complete failure of proof concerning an essential element of the nonmoving party's case" and on which the nonmoving party will bear the burden of proof at trial, there can be "'no genuine issue as to any material fact,'" with respect to that claim. <u>Id.</u> at 322-323.[18]

Petitioner at pages 4 and 5 of his reply to respondent's objection to petitioner's motion, attempts to bring his case

---

[18]See also <u>Fontenot v. Upjohn Co.</u>, 780 F.2d 1190, 1195 (5th Cir. 1986), a case cited by the Court in <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986), wherein it is stated: "If the moving party can show that there is no evidence whatever to establish one or more essential elements of a claim on which the opposing party has the burden of proof, trial would be a bootless exercise, fated for an inevitable result".

within the rule of Celotex,[19] by arguing that "respondent has offered not a shred of evidence to oppose petitioner's motion".

Petitioner's assertion that at trial respondent must prove fraud by clear and convincing evidence is correct.  Rule 142(b); sec. 7454(a); Stone v. Commissioner, 56 T.C. 213, 220 (1971). Furthermore, petitioner is correct in stating that unless respondent proves petitioner's fraud, the statute of limitations precludes the assessment of any deficiency for tax year 1982. Sec. 6501(a), (c)(1).  It is also true that as part of her burden in the trial of a fraud case, respondent must first prove an underpayment of some amount of tax.  Sec. 6653(b).  As this Court has recognized, "Absent an underpayment, there is nothing to which the fraud addition may attach."  Apothaker v. Commissioner, T.C. Memo. 1985-445; Hebrank v. Commissioner, 81 T.C. 640, 642 (1983) (first element to be established is an underpayment of tax).  In opposing this motion, respondent stressed the intent element and ignored the underpayment element of fraud. Nevertheless, respondent and petitioner have filed with the Court stipulated facts and documents related to both elements.[20]

---

[19]See also Anderson v. Liberty Lobby, Inc., 477 U.S. 242 (1986) for a description of the nonmoving party's burden of proof once the moving party has made a proper showing under the rule of Celotex Corp v. Catrett, supra.

[20]Petitioner's written submissions and oral argument at the hearing on this motion suggest that the documents and facts stipulated by the parties are not to be considered as "evidence" or "facts" presented by respondent.  Petitioner cannot seriously
(continued...)

- 13 -

Showing of a Genuine Issue of Material Fact

The underpayment element of fraud

In its present state, the record shows that petitioner used $82,477 in cash to purchase 232 money orders in 1982. In addition, the parties have stipulated to certain cash expenditures for personal items by petitioner and his deposits of currency to accounts he controlled during 1982. Petitioner has admitted by way of stipulation that he wrote no checks to cash in 1982, got no cash back from deposits in 1982, and was paid only $11,110 in cash (as a loan) by E & A of Illinois in 1982. An examination of his individual tax return for the year reveals no apparent source of cash receipts. Thus, petitioner has unexplained currency expenditures for the year 1982 and the record in its present state is devoid of any evidence of nontaxable sources of cash except for the above noted loan. The record suggests that the amount by which petitioner's cash expenditures[21] exceed his known sources of income for 1982 is taxable income. See Meier v. Commissioner, 91 T.C. 273 (1988);

---

[20](...continued)
argue that stipulations do not fall into the category of "pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials", Rule 121(b). Under our Rules "A stipulation shall be treated * * * as a conclusive admission by the parties to the stipulation", Rule 91(e), emphasis supplied. See, e.g., Noneman v. Commissioner, T.C. Memo. 1978-283.

[21]Cash bank deposits are another form of cash expenditure. Meier v. Commissioner, 91 T.C. 273, 295 n.28 (1988).

Salls v. Commissioner, T.C. Memo. 1992-547, affd. without published opinion 26 F.3d 1120 (11th Cir. 1994).

### The intent element of fraud

The parties have stipulated for the years 1980 and 1981 facts similar to those of 1982. These facts show an apparent pattern of unexplained (at this point in the proceedings) cash expenditures and deposits by petitioner.

Petitioner makes much of the stipulation that certain cash amounts possessed by petitioner in 1982 were "reported as income" on the return of Savage. According to petitioner, these cash amounts were "earned" by Savage,[22] and since the cash was Savage's income, petitioner had no duty to report it.[23] Petitioner concludes that he therefore could not have committed fraud, and if he did have a duty to report additional income on

---

[22]This argument is without evidence in the record other than the reporting position of Savage on the FYE 1982 return. This return position is not binding on the Court. "In answering the question of who earned income, it is our task to consider what was actually done, rather than simply the declared purpose of the participants". Shaw v. Commissioner, 59 T.C. 375, 383 (1972).

[23]Petitioner comes to the erroneous legal conclusion that amounts reported as income by a corporation, Savage, cannot have been income to another party, i.e., himself. We will not attempt to catalog all the situations which contradict such a conclusion but cite for consideration, Truesdell v. Commissioner, 89 T.C. 1280 (1987) (amounts diverted from taxpayer's corporation and used for expenses for another business owned by taxpayer were taxable income to taxpayer); Burke v. Commissioner, T.C. Memo. 1987-434, affd. without published opinion sub nom. New Resources v. Commissioner, 857 F.2d 1471 (5th Cir. 1988). (taxpayer's use of corporate funds as capital investment in new corporation, stock of which was held in his own name, was income to him as a constructive dividend).

his personal return, his failure to do so was an honest mistake. Respondent views differently the same evidence.

Respondent argues that the cash amounts represent earnings of E & A of Illinois skimmed by petitioner as "diverted receipts", or constructive dividends, that petitioner should have reported as taxable income on his personal return. Respondent argues that the Savage return only reported the disputed amounts after petitioner discovered he was under criminal investigation by the IRS and is itself an act in continuation of petitioner's fraud for the year 1982.

Even where the nonmoving party on a motion for summary judgment would have the burden of proof at trial on an issue, she is entitled to have the most favorable inferences drawn in her behalf and to be given the benefit of favorable legal theories invoked by the evidence. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 255 (1986); Charbonnages de France v. Smith, 597 F.2d 406, 414 (4th Cir. 1979).

The present record indicates a 3-year pattern of unexplained excess cash expenditures by petitioner as well as extensive uses of currency. In addition, we cannot overlook petitioner's stipulation to pleading guilty to the criminal violation of filing a false individual income tax return for the year 1980. In a signed plea agreement with the Government, petitioner admitted receiving income from "skimming cash proceeds from

Entertainment & Amusement, Inc." which he knew he was required to report but nevertheless did not.[24]

Finally, we have previously described other facts in the record from which a trier of fact might infer attempts by petitioner to conceal assets. These are all potential "badges of fraud".[25]

Conclusion

Petitioner seems to believe that factual ambiguities in the record require a decision in his favor on this motion. However, when considering a motion for summary judgment, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 249 (1986); accord Shiosaki v. Commissioner, 61 T.C. 861, 862 (1974).

Petitioner has neither produced evidence negating an essential element of respondent's case, nor has he shown a

---

[24]Petitioner's criminal conviction for 1980 is admissible and may be relevant to prove "motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident". Fed. R. Evid. 404(b).

[25]See Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601 (recites a nonexclusive list of "badges of fraud"); Padow v. Commissioner, T.C. Memo. 1987-250, affd. without published opinion 843 F.2d 1388 (4th Cir. 1988). (prior conviction for criminal tax violation for first of 3 years was evidence of fraudulent intent for remaining 2 years), citing Farber v. Commissioner, 43 T.C. 407, 421 n.10, modified 44 T.C. 408 (1965).

"complete failure of proof" in the record on an essential element of respondent's case.  Petitioner has failed to make the initial showing required by Rule 121(b) and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986).  We, as a result, find that petitioner has failed to show that there is no genuine issue as to any materialfact and that a decision may be rendered as a matter of law as to the deficiency and additions to tax for the year 1982. We therefore deny petitioner's motion for partial summary judgment.

<u>An appropriate order</u>

<u>will be issued</u>.