T.C. Memo. 2002-28

UNITED STATES TAX COURT

THOMAS R. CAMERATO, Petitioner <u>v</u>. COMMISSIONER OF
INTERNAL REVENUE, Respondent

Docket No. 2262-00.                     Filed January 25, 2002.

Thomas R. Camerato, pro se.

<u>Margaret S. Rigg</u>, for respondent.

MEMORANDUM OPINION

BEGHE, <u>Judge</u>:  On August 23, 1999, respondent issued a
notice of final determination denying petitioner's claim for
abatement of interest for the tax years 1992 and 1993.
Petitioner timely filed a petition and amended petition under

section 6404(i)[1] and Rule 281 with this Court, and respondent timely filed an answer to the amended petition. Petitioner was a resident of California at the times he filed his petition and amended petition.

The case is before us on respondent's motion for summary judgment, as supplemented. We conclude, on the undisputed facts before us, that petitioner is not entitled to abatement of interest.[2] We therefore grant respondent's motion for summary judgment.

Background

The following facts have been admitted or established by uncontroverted documentary evidence.

In 1993, petitioner moved from California to Pittsburgh, Pennsylvania, to attend the Carnegie-Mellon graduate school of business. He used his Pittsburgh residence address on his 1993 Federal income tax return.

---

[1] Unless otherwise indicated, section references are to the Internal Revenue Code as in effect for the tax years for which petitioner claims abatement of interest, and Rule references are to the Tax Court Rules of Practice and Procedure.

[2] Petitioner argues in his opposition to respondent's motion for summary judgment that he is also entitled to an abatement of interest for tax year 1997. Petitioner did not request in his petition or amended petition an abatement of interest with respect to 1997. Moreover, respondent's determination denying abatement relates only to tax years 1992 and 1993. Therefore, any issue relating to tax year 1997 is not properly before us.

On or about September 7, 1994, respondent sent a notice to petitioner at his Pittsburgh residence address that respondent would audit petitioner's 1992 Federal income tax return.

On September 9, 1994, petitioner telephoned respondent's Pittsburgh, Pennsylvania, office to demand that the audit be postponed until May 1995 and transferred at that time to California, because petitioner's business expense records were stored in California and it would be inconvenient and expensive for petitioner to retrieve them.  Petitioner indicated that he intended to graduate from school and move back to California in May 1995.  Respondent refused to delay the audit until May 1995.

On October 25, 1994, respondent notified petitioner that petitioner's 1993 Federal income tax return would also be audited.

Between September and November 1994, petitioner had several further telephone conversations with respondent's personnel. Petitioner demanded that respondent stop sending him "threatening" letters, indicated that he would not cooperate with the scheduled audits, and again indicated that he wanted to have the audits delayed to May 1995 and transferred to California.

Because petitioner did not appear for an examination or submit documentary evidence to support his deductions, respondent on April 4, 1995, sent petitioner, at his Pittsburgh residence address, by certified mail, a notice of deficiency for 1992 and

1993, disallowing deductions claimed on his 1992 and 1993 returns. The notice of deficiency was returned to respondent because petitioner failed to claim it. The deficiencies were assessed on August 4, 1995.

Petitioner claims that in May 1995 he received the "run around" when he tried to resolve his tax liabilities. He claims to have walked into the Oakland, California, branch of the Internal Revenue Service, with his records but without a prior appointment, demanding an immediate audit, but was turned away. But in a letter dated December 28, 1998, petitioner admitted that he did not actively pursue the matter until June 1997, when respondent applied a later year refund to his assessed income tax deficiencies:

> Since my primary concern was finding a job in order to pay for living expenses as well as paying back my debt of $35,500 [for student loans], resolving this matter with the IRS took a back seat because it was not going to be as easy and straight forward as it should be [to find a job] * * * As a taxpayer ignorant of the bureaucratic gridlock that is pervasive throughout the IRS, I became frustrated and gave up (until June 1997), not having either the time or the energy to figure out the ways of the IRS, I knew that I did not owe any taxes and that sometime the IRS would contact me.

Petitioner filed a request for reconsideration of the deficiencies on November 17, 1997.

Because petitioner had failed to attach documentation to his request for reconsideration, respondent on January 29, 1998,

issued a decision abating a portion of the 1993 deficiency, but denying any abatement of the 1992 deficiency.

On April 7, 1998, petitioner filed a second request for reconsideration. In May 1998, petitioner contacted the IRS problem resolution program and was advised of the need to provide records to support his request for reconsideration. Respondent received records from petitioner on June 9, 1998. On September 3, 1998, respondent called petitioner to schedule an appointment to review petitioner's records. Petitioner requested that the appointment be delayed until October 1998 because of a conflict with petitioner's vacation plans. On October 6, 1998, petitioner met with respondent, and respondent and petitioner agreed upon substantially reduced deficiencies.[3] In addition to reducing the deficiencies, respondent waived all penalties. Respondent refused to abate interest on the substantially reduced

---

[3] The parties have failed to provide the Court with the text or terms of the agreement. According to petitioner, respondent in the notice of deficiency originally sought to assess deficiencies for 1992 and 1993 totaling approximately $20,000. Respondent voluntarily reduced the deficiencies to approximately $1,600 after respondent granted petitioner's request for a new audit and accepted petitioner's documentation of most of his deductions. Because petitioner's time to seek Tax Court review of the notice of deficiency had expired by the time of his request for reconsideration, petitioner would have had to pay the tax, file a claim for refund with respondent, and after denial sue respondent for a refund if respondent had, in his discretion, refused petitioner's request for a new audit. Petitioner shows no appreciation for respondent's twice granting petitioner's requests for reconsideration, or for voluntarily agreeing to reduce the assessed deficiencies without first requiring payment.

deficiencies from the time they were due until they were paid. Petitioner seeks review of respondent's refusal to abate interest.[4]

### Discussion

Petitioner argues that the interest on the reduced deficiencies should be abated because respondent wrongfully refused to postpone and transfer the initial audit to May 1995 in California, and because respondent is responsible for all delays after May 1995 in reconsidering the assessment.

Petitioner also objects in his responses to respondent's motion for summary judgment, contending that summary judgment is an unfair procedure because it is "not a mechanism for presenting my case and on top of that it is not a forum I ever agreed to." Petitioner wants a trial so that he can call or force respondent to call as witnesses various Internal Revenue Service employees with whom he had contact both in Pennsylvania and California, and can compel respondent to produce a "short list" of 20 categories of documents, including personal records of respondent's auditors, respondent's auditor and employee hiring guidelines and training programs, the results of all customer satisfaction

---

[4]The parties have not made clear what is the amount in dispute. It appears to us that the total amount in dispute is less than $1,000, consisting of interest on the agreed deficiencies of approximately $1,600 from, at the earliest, May 1995 (when petitioner first wanted the audit to be held) until petitioner paid the deficiencies in 2000.

surveys carried out by respondent, and all policy changes made by respondent in handling audits from 1994 to the present.

I.    Standard for Summary Judgment

Contrary to petitioner's objections, summary judgment is not a novel procedure to be employed only with the consent of both parties.  We stated in Smith v. Commissioner, T.C. Memo. 1996-292:

> Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials of phantom factual issues.  Kroh v. Commissioner, 98 T.C. 383, 390 (1992); Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988). * * *

Our Rule 121 provides for summary judgment in appropriate cases and follows the basic structure of rule 56 of the Federal Rules of Civil Procedure applied by Federal courts nationwide.

The rules permitting summary judgment recognize that trials are necessary when there is a disputed issue of material fact that can properly be resolved only by hearing live testimony. Holding a trial serves no valid purpose when the issues can be resolved as a matter of law on undisputed facts established by affidavits, party admissions and other appropriate evidence.  In

an appropriate case, summary judgment saves both party and judicial resources and results in the expeditious and efficient resolution of controversies.

The party moving for summary judgment need not negate with evidence every allegation made by the opposing party.  As we stated in Toushin v. Commissioner, T.C. Memo. 1995-573:

> In Celotex [Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)], the Supreme Court held that the moving party in a summary judgment action need not in all cases introduce evidence negating an essential element of the opponent's claim in order to prevail on the motion.  If the moving party, after adequate time for discovery, can make a "showing" from the record of "a complete failure of proof concerning an essential element of the nonmoving party's case" and on which the nonmoving party will bear the burden of proof at trial, there can be "'no genuine issue as to any material fact,'" with respect to that claim.  Id. at 322-323. [Toushin v. Commissioner, T.C. Memo. 1995-573; fn. ref. omitted.]

Once the opposing party presents evidence to support its claims, we must draw all inferences from that evidence in favor of the party opposing summary judgment.  United States v. Diebold, Inc., 369 U.S. 654, 655 (1962).  But any inference must be drawn from evidence submitted in connection with the summary judgment motion, and not from mere allegations in the pleadings.  Celotex Corp. v. Catrett, supra at at 324.

II.  Standard for Tax Court Review of Commissioner's Refusal To Abate Interest

Section 6404(e)[5] authorizes the Commissioner to abate the assessment of interest on any deficiency or payment of tax if there is a delay in such payment attributable in whole or in part to any error or delay by an officer or employee of the Internal Revenue Service in performing a ministerial act.  The statute specifically provides that an "error or delay shall be taken into account only if no significant aspect of such error or delay can be attributed to the taxpayer involved".  Sec. 6404(e)(flush language).  In addition, an error or delay is taken into account only "after the Internal Revenue Service has contacted the taxpayer in writing with respect to such deficiency or payment."  Id.  Thus, abatement of interest for the period of time between the date a taxpayer files a return and the date respondent commences an audit is not permitted under section 6404(e).  Sims v. Commissioner, T.C. Memo. 1999-414 (citing H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844).

---

[5] Sec. 6404(e) was amended in 1996 by sec. 301 of the Taxpayer Bill of Rights 2, Pub. L. 104-168, 110 Stat. 1452, 1457 (1996), to permit the Commissioner to abate interest with respect to an "unreasonable" error or delay resulting from "managerial or ministerial acts."  This amendment applies to interest accruing with respect to deficiencies or payments for tax years beginning after July 30, 1996.  Woodral v. Commmissioner, 112 T.C. 19, 25 n.8 (1999).  Accordingly, the amendment is not applicable to petitioner's 1992 and 1993 tax years.

Interest abatement is not a routine matter; the taxpayer has had the use of the unpaid taxes, and the Treasury has not had the use of the taxes to which it was entitled. As we recently observed in Smith v. Commissioner, T.C. Memo. 2002-1, quoting the legislative history:

> Section 6404(e) is not intended to be "used routinely to avoid payment of interest", but rather is to be "utilized in instances where failure to abate interest would be widely perceived as grossly unfair." H. Rept. 99-426, at 844 (1985), 1986-3 C.B. (Vol. 2) 1, 844; S. Rept. 99-313, at 208 (1985), 1986-3 C.B. (Vol. 3) 1, 208.

A ministerial act is a nondiscretionary procedural act that the Commissioner is required to perform. According to the legislative history:

> The committee intends that the term "ministerial act" be limited to nondiscretionary acts where all of the preliminary prerequisites, such as conferencing and review by supervisors, have taken place. Thus, a ministerial act is a procedural action, not a decision in a substantive area of tax law. For example, a delay in the issuance of a statutory notice of deficiency after the IRS and the taxpayer have completed efforts to resolve the matter could be grounds for abatement of interest. The IRS may define a ministerial act in regulations. [S. Rept. 99-313, supra at 209, 1986-3 C.B. (Vol. 3) at 209; emphasis added.]

Similarly, the temporary regulations provide:

> The term "ministerial act" means a procedural or mechanical act that does not involve the exercise of judgment or discretion, and that occurs during the processing of a taxpayer's case after all prerequisites to the act, such as conferences and review by supervisors, have taken place. A decision concerning the proper application of federal tax law (or other federal or state law) is not a ministerial act. [Sec.

301.6404-2T(b)(1), Temporary Proced. & Admin. Regs.,
52 Fed. Reg. 30163 (Aug. 13, 1987).]

Acts that are not ministerial are either managerial or arise out of general administrative decisions.  Abatement is not available for managerial acts during the tax years in question and has never been available for actions or nonactions attributable to general administrative decisions.  The House committee report on the 1996 amendments made by the Taxpayer Bill of Rights 2 (TBOR 2)(under which relief was expanded prospectively to include managerial acts as well as ministerial acts) explains:

> The bill permits the IRS to abate interest with respect to any unreasonable error or delay resulting from managerial acts as well as ministerial acts. * * *  On the other hand, interest would not be abated for delays resulting from general administrative decisions.  For example, the taxpayer could not claim that the IRS's decision on how to organize the processing of tax returns or its delay in implementing an improved computer system resulted in an unreasonable delay in the Service's action on the taxpayer's tax return, and so the interest on any subsequent deficiency should be waived. [H. Rept. 104-506, at 27-28 (1996), 1996-3 C.B. 49, 75-76; emphasis added.]

Originally, the Commissioner had the discretion not to abate interest even when the statutory requirements were met:  "The bill gives the IRS the authority to abate interest but does not mandate that it do so".  S. Rept. 99-313 (1986), 1986-3 C.B. (Vol. 3) 208-209.  TBOR 2 gave the Tax Court authority under

section 6404(i)[6] to review the Commissioner's denial of a taxpayer's request for abatement of interest.  "The bill grants the Tax Court jurisdiction to determine whether the IRS's failure to abate interest for an eligible taxpayer was an abuse of discretion."  H. Rept. 104-506, supra at 28, 1996-3 C.B. at 76. The Court may order abatement only where the Commissioner's failure to abate interest was an abuse of discretion.  Sec. 6404(i).  The taxpayer has the burden of proof to demonstrate that the Commissioner, in failing to abate interest, "exercised his discretion arbitrarily, capriciously, or without sound basis in fact or law."  Woodral v. Commissioner, 112 T.C. 19, 23 (1999); see also Hanks v. Commissioner, T.C. Memo. 2001-319.

III. Petitioner Has Not Shown Any Genuine Issue of Material Fact.

After being advised by this Court to review our Rules on summary judgment (which are available from the Clerk of Court and on the Internet, to which petitioner indicated he has access), petitioner failed to submit an affidavit or any other evidence to support his allegations.  Because petitioner would bear the burden of proof at trial on all issues, summary judgment is mandated here as a matter of procedure under the Supreme Court's Celotex standard.  Celotex Corp. v. Catrett, 477 U.S. at 323.

---

[6] Sec. 6404(i) was formerly designated sec. 6404(g), but was redesignated sec. 6404(i) by the Internal Revenue Service Restructuring & Reform Act of 1998, Pub. L. 105-206, secs. 3505(a), 3309(a), 112 Stat. 743, 745.

In granting respondent's motion, we do not rely on petitioner's procedural failures. Even if we should accept petitioner's unsupported allegations as true and properly supported by evidence, we would still grant respondent's motion for summary judgment. As a matter of law, none of the five grounds for abatement that petitioner has alleged is a valid ground for relief.

First, petitioner alleges that respondent improperly refused to grant his request made on September 9, 1994, to delay the audit of his returns until he completed his graduate work in May 1995. Even if wrongful, respondent's refusal to delay the audit would not constitute a legal basis for the abatement of interest. Respondent's decision to refuse to delay the audit is not a ministerial act; it is a managerial act involving the exercise of discretion for which interest abatement is not available to petitioner in this case.

Second, petitioner alleges that "I told the IRS auditor in September & October 1994 that the best address to use for me was my mailing address on the Carnegie Mellon University Campus. * * * He apparently didn't register that address change." Petitioner alleges that he therefore did not know about the April 4, 1995, notice of deficiency. Petitioner argues, in essence, that if respondent had mailed the notice of deficiency to his "better" Carnegie Mellon address, he would have received it,

would have filed a petition for review with the Tax Court, would have obtained an earlier determination of his deficiency, and thereby could have avoided interest accruing on the deficiency from the time the Tax Court would have ruled until the deficiency was finally agreed upon.

Initially, we note that petitioner's claim is flawed because he has failed to show the specific period of time over which interest should be abated as a result of this claimed "error or delay." See Donovan v. Commissioner, T.C. Memo. 2000-220.

Moreover, even ignoring this structural flaw, petitioner has failed to establish that respondent committed any error, let alone a ministerial one, in sending the notice of deficiency to the address shown on his tax return, rather than to his school address as he alleges he orally requested.

Respondent was required to mail the notice of deficiency to petitioner's "last known address." Sec. 6212(b)(1). Neither section 6212 nor the regulations promulgated thereunder and in effect when the notice of deficiency was mailed[7] define a taxpayer's "last known address." We have defined it as the address to which, in light of all the facts and circumstances, respondent reasonably believed the taxpayer wished the notice of

_____

[7]Sec. 301.6212-2, Proced. & Admin. Regs, promulgated on Jan. 11, 2001, defines "last known address." This new regulation was not in effect when the notice of deficiency in the case at hand was mailed, and by its terms is effective only to mailings on and after Jan. 29, 2001. Sec. 301.6212-2(d), Proced. & Admin. Regs.

deficiency to be sent.  Frieling v. Commissioner, 81 T.C. 42 (1983).  "Absent 'clear and concise notification' from the taxpayer directing respondent to use a different address, respondent is entitled to treat the address shown on the return * * * as the taxpayer's 'last known address.'"  Id. at 49; see also Abeles v. Commissioner, 91 T.C. 1019 (1988) (address on most recently filed return).

Petitioner has not alleged that he communicated an address change to respondent in a clear and concise way.  Petitioner alleges only that he orally offered a preferred alternative address.

Moreover, it is clear from petitioner's own admission that respondent did not take account of the change:  "He [respondent's employee] apparently didn't register that address change", says petitioner.  Petitioner has not alleged facts to show that respondent took account of the address change, such as by sending correspondence to his new address before the notice of deficiency was mailed to the old address.  See Frieling v. Commissioner, supra; Weinroth v. Commissioner, 74 T.C. 430 (1980).

Given that petitioner:  (1) Used his residential address rather than his Carnegie Mellon University address on his most recently filed tax return, (2) had not moved from his residential address at the time he allegedly advised respondent that the

"best address" to use was his Carnegie Mellon University address, (3) gave no formal written notice to respondent of his change of address, and (4) offered no evidence that respondent ever used or acknowledged his change of address, we hold that respondent committed no error, and in any event no error of a ministerial nature, by mailing the notice of deficiency to the address on petitioner's most recently filed Federal income tax return.

In addition, even if petitioner had effected a change of address, the evidence suggests that petitioner improperly refused delivery of the notice of deficiency. Petitioner claims he did not move to California until May 1995--long after the deficiency notice was sent to him by certified mail on April 4, 1995, and would have been delivered to him in the ordinary course, if claimed by him. Respondent has submitted evidence that petitioner was seeking to avoid receiving correspondence from respondent. According to notes of respondent's telephone calls with petitioner on October 28, 1994 and November 16, 1994, petitioner demanded that respondent stop sending him correspondence regarding the deficiency. These telephone logs, combined with proof that the certified letters were sent to petitioner at a then-current address and were returned by the Postal Service unclaimed, suggest that petitioner made a conscious decision not to pick up from the Postal Service the certified letter from respondent. Petitioner has not offered any

explanation or justification for his failure to claim the certified letter that respondent mailed to his then-current residence address.

Third, petitioner alleges that he was not told that his request to delay the audit until May 1995 and to transfer the audit to California had been denied. The evidence submitted by respondent shows that petitioner was repeatedly told that respondent would not delay the audit until May 1995, and that he would be advised only if his request for delay were to be granted. Moreover, petitioner's own letter to respondent dated April 28, 1998, shows that he knew when the audit was scheduled. Petitioner's claim that he did not know about the audit appears to be a recent afterthought. Petitioner states in his petition:

> Since I could not afford the trip back to California
> and the IRS auditor was being completely uncooperative-
> -I was not trying to evade paying taxes, nor was I
> being unreasonable or uncooperative with the IRS--I
> missed the November 1994 audit.

The allegation in his petition--that petitioner did not attend the audit because he could not afford to retrieve his records--is inconsistent with petitioner's new position that he missed the audit because he was not informed of the date and time.

Finally, petitioner made it clear in his conversations with respondent (evidenced by the contemporaneous notes of those conversations attached to respondent's affidavit), that he would not participate in the audit unless it was delayed until after

May 1995 and transferred to California, as he demanded.  Had respondent advised petitioner again that his request for delay/transfer had been finally denied, petitioner's own statements indicate that he would not have participated in the audit and that the same events would have happened.

Fourth, petitioner contends that the process by which IRS customer service officers are trained constitutes a "ministerial error" that resulted in the delay in paying his deficiency.  "My claim is that the process and procedure of recruiting, hiring and training IRS customer service representatives is what was the cause of the error or delay (a ministerial error not a managerial error."  We disagree.  The process of recruiting, hiring, and training IRS customer service representatives is attributable to respondent's general administrative decisions, and not to a ministerial act, and therefore no relief is available to petitioner on account of these decisions.

Fifth, petitioner argues that respondent committed a ministerial error or delay by failing to audit petitioner's records on-the-spot when he walked into respondent's Oakland office in September 1995, without an appointment, and demanded an immediate audit of his returns.  Petitioner has, of course, cited no authority for his position that respondent is required to perform audits-on-demand for taxpayers who walk in to respondent's offices, and we are aware of no such requirement.

Respondent's decision to grant or deny an immediate audit is not a ministerial act; it is a managerial act involving the exercise of discretion.

Petitioner has failed to allege any ministerial error or delay by respondent that caused an increase in petitioner's interest obligation.  Moreover, the evidence alleged by petitioner is replete with acts by petitioner causing delay, including his initial demand that the audit be delayed until he completed his schooling, his demand that a subsequent audit be delayed until he returned from vacation, his failure to pursue review of respondent's decisions for many months due to his busy schedule, his unwillingness to listen to respondent's positions or to cooperate with respondent in an effort to accommodate his requests, and his rude and insulting statements to respondent's customer service representatives (which are evidenced in the customer service notes of petitioner's conversations with respondent's customer service representatives, in petitioner's letters to respondent, and in the papers petitioner filed with this Court).  The record in this case shows clearly that a significant aspect of the delay, if not all of the delay, in finally determining the correct amount of petitioner's deficiencies is attributable to petitioner.

We find no error in respondent's determination that petitioner is not entitled to an abatement of interest in excess

of the reductions that have already occurred as a result of respondent's reconsideration and reduction of the assessed deficiencies.  Respondent's motion for summary judgment will be granted as supplemented.

To reflect the foregoing,

<u>An appropriate order and decision will be entered granting respondent's motion for summary judgment as supplemented</u>.