In the Matter of EDWARD A. WAGNER (Admitted as EDWARD ALAN WAGNER), Attorney, Respondent. DEPARTMENTAL DISCIPLINARY COMMITTEE FOR THE FIRST JUDICIAL DEPARTMENT, Petitioner.

First Department, February 19, 1985

**APPEARANCES OF COUNSEL**

*James R. Cohen* of counsel (*Michael A. Gentile,* attorney), for petitioner.

*Joseph W. Ryan, Jr.,* for respondent.

**OPINION OF THE COURT**

Per Curiam.

Respondent Edward A. Wagner was admitted to practice as an attorney and counselor-at-law in December of 1964 by the Appellate Division of the Supreme Court, First Judicial Department. At all times relevant herein, he maintained an office for the practice of law in the First Department.

On November 8, 1982, following a 12-week jury trial in the United States District Court for the Southern District of New York, respondent was convicted of (1) one count of conspiracy to defraud the United States by violating the mail fraud and income tax statutes in violation of 18 USC § 371, (2) 29 counts of aiding and assisting in the preparation of false tax returns in violation of 26 USC § 7206 (2), (3) 13 counts of mail fraud in violation of 18 USC § 1341, and (4) one count of knowingly

making and subscribing a false and fraudulent personal income tax return in violation of 26 USC § 7206 (1). He received a sentence of nine months' incarceration, four years' probation and a $30,000 fine. Thereafter, respondent appealed his judgment of conviction to the United States Court of Appeals for the Second Circuit which, in an order dated May 5, 1983, affirmed in all respects. He served 7½ months of his prison term and has fully paid the fine imposed upon him.

Petitioner Departmental Disciplinary Committee presented a "serious crime" petition, pursuant to Judiciary Law § 90 (4) (d) to the Appellate Division, First Department, seeking an order suspending respondent from the practice of law and directing him to show cause why a final order of censure, suspension or removal from office should not occur. By order of this court, dated July 14, 1983, respondent was suspended from the practice of law pending final determination of the petition, and the matter was referred to a referee for the purpose of taking testimony thereon and making a recommendation to the court. Accordingly, a hearing was held on May 30, 1984 before Honorable Frank McNabb, who filed his report on October 10, 1984.

At the outset, it should be noted that the indictment against defendant, which named him and three other individuals, described a scheme to establish fraudulent tax shelters. This was accomplished by the creation of a limited partnership whose funds, contributed by individual investors solicited by the defendants, were used to finance the purchase of movie rights. The investors, as a result of their membership in the partnership, would be entitled to substantial tax deductions. Prior to October 4, 1976, the tax laws of the United States permitted owners of certain motion pictures to obtain favorable tax treatment for their investments. Since the tax shelters involved herein were set up before that date, the illegality was not so much in the arrangement itself but in the operating procedures of its promoters.

In that connection, the Government alleged that the actual purchase price for the movies was far less than that represented to the investors. To perpetrate this deception, two sets of books were maintained, one for the Government's benefit and the other depicting an accounting of what had really transpired. The set employed to report income tax filings was knowingly inflated, and respondent was aware that the figures therein were fraudulent. Checks drawn in amounts representing the inflated prices were provided to sellers of the films, who indorsed these checks and returned them to the defendants. Thereafter, cash

was paid to the sellers in place of the checks. In addition, there were back-datings of contracts so as to include some of the purchases within operation of the old expired law. Following a lengthy trial in which the jury had ample opportunity to examine the strength of the Government's evidence, as well as that of the defense, respondent was convicted of 44 counts of serious criminal offenses.

The only matter at issue now is the sanction to be imposed. While respondent may not have been an instigator of the scheme, the evidence clearly showed that he was thoroughly knowledgeable about its fraudulent nature, participated fully in it, promoted the plan, assisted and advised investors in the preparation and presentation of fraudulent tax returns, and filed a fraudulent tax return himself. The venture not only defrauded the United States Government but individual investors as well. The Government's position was entirely sustained by the jury verdict and the judgment was affirmed on appeal. Thus, what occurred here was not simply an isolated misdeed on the part of respondent. Rather, he engaged in an ongoing deliberate course of conduct pursuant to which it was his clear intent to profit financially at the expense of the United States Government and those investors who sincerely believed that they were putting their money into a legitimate tax shelter.

Respondent has, accordingly, forfeited the right and the privilege of practicing law. When investors and/or clients secure the services of an attorney, they should do so with the confidence that they will receive legitimate counsel, not be tutored in how to violate the law. In view of the seriousness of respondent's misconduct, none of the factors which are offered in mitigation can significantly detract from his wrongdoing. Respondent is a prominent entertainment lawyer who has had an exemplary family life, no previous conflict with the law, and no prior disciplinary proceedings have been brought against him. It is particularly troublesome that despite all the benefits of such a background, he was not deterred from engaging in a thoroughly repugnant criminal scheme. Moreover, the prolonged suffering which respondent asserts that he has already suffered as a consequence of his indictment and conviction, including the loss of esteem and reputation in the community, are the natural and expected outcome of his behavior, and the high legal expenses incurred by him are the result of his protracted effort to litigate the charges against him from trial through the Circuit Court.

Therefore, the motion by petitioner Departmental Disciplinary Committee to confirm the referee's report is granted in

part, and respondent is disbarred as an attorney and counselor-at-law, effective immediately.

SULLIVAN, J. P., ROSS, BLOOM, MILONAS and KASSAL, JJ., concur.

Motion to confirm referee's report granted to the extent of confirming the referee's report in part, and denying the branch thereof recommending a suspension, and respondent is disbarred as an attorney and counselor-at-law in the State of New York, effective February 19, 1985.