T.C. Memo. 1996-355

UNITED STATES TAX COURT

EDWARD A. WAGNER AND
BARBARA WAGNER, Petitioners <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 7602-88.                     Filed August 5, 1996.

<u>Jared J. Scharf</u>, for petitioners.

<u>Michael D. Wilder</u>, for respondent.

MEMORANDUM OPINION

BEGHE, <u>Judge</u>:  This case is before us on respondent's motion
for summary judgment under Rule 121(b)[1] that petitioner Edward A.

---

[1]Except where otherwise noted, rules referred to are the
Rules of this Court, and sections referred to are sections of the
Internal Revenue Code in effect in the year in question.

Wagner (petitioner) is liable for the fraud addition to tax for the year in issue. After concessions, the sole issue for decision is whether we should conclude, as a matter of law, that petitioner is liable for the section 6653(b) addition to tax for fraud for the taxable year 1975.

The facts set forth in the Background portion of this Opinion are stated solely for the purpose of deciding the motion and are not findings of fact for this case. Fed. R. Civ. P. 52(a); Boyd Gaming Corp. v. Commissioner, 106 T.C. 343, 345 n.5 (1996); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994).

## Background

On May 26, 1982, a grand jury convened in the U.S. District Court for the Southern District of New York indicted petitioner and three alleged coconspirators for various crimes. The indictment described a scheme, as summarized below, to establish fraudulent tax shelters through the creation of limited partnerships, including Caldwell Properties (Caldwell), whose funds, contributed by individual investors solicited by the defendants, were used to finance the purchase of movie rights. The tax deductions and credits to which the investor-partners thereby ostensibly became entitled were grossly inflated by the reporting of purchase prices for the movies that greatly exceeded the prices actually paid by the purchasers. To perpetrate the

deception, two sets of books were maintained, one to be shown to the Government and the other accounting for what had really happened. The set of books employed to prepare partnership returns of income and reports of the partners' distributive shares of deductions and credits was knowingly inflated. For some of the partnerships, not including Caldwell, checks drawn in amounts representing the inflated prices were provided to sellers of the films, who endorsed these checks and returned them to the conspirators. Thereafter, cash in lesser amounts than the face amounts of the checks was paid to the sellers in place of the checks, resulting in "skim money" to the conspirators. For other partnerships, including Caldwell, the conspirators interposed a third party, which they controlled, between the seller and the purchaser of the film and used this controlled third party to achieve a similar inflation of these partnerships' purchase prices for movies and concurrent diversion of skim money to the conspirators. For Caldwell, the interposed controlled third party was Cinepix Establishment, and the movie that was the subject of the transaction in issue was "Adios Amigos". In addition, contracts were backdated so as to allow some of the purchases to avoid the operation of a change in law providing, with effect on contracts not finalized prior to September 11, 1975, that nonrecourse notes could no longer be included in the

cost of a movie for the purpose of computing losses for 1976 and later years.

Petitioner was the business and transactional lawyer for some of the partnerships, but respondent now concedes that he did not receive any of the skim money resulting from the inflated prices. In this respect, his position differs from that of his three coconspirators, who conceded the receipt of unreported income from skim money, and fraud additions, for some of their taxable years.

On November 8, 1982, following a 12-week jury trial in the U.S. District Court for the Southern District of New York, in which the defendants were petitioner and his three coconspirators, petitioner was convicted of (1) one count of conspiracy to defraud the United States in violation of 18 U.S.C. sec. 371 (1994); (2) thirteen counts of mail fraud in violation of 18 U.S.C. sec. 1341 (1994); (3) twenty-nine counts of aiding and assisting in the preparation of false tax returns in violation of section 7206(2); and (4) one count of knowingly making and subscribing a false and fraudulent personal income tax return in violation of section 7206(1).[2] The indictment alleged,

---

[2]The charges were summarized by the court that confirmed petitioner's disbarment as a New York attorney. In re Wagner, 485 N.Y.S.2d 278 (N.Y. App. Div. 1985). That court also made reference to the criminal proceeding, United States v. Glantz, 82 Cr. 162 (S.D.N.Y.), in the subsequent securities case, Zola v. Gordon, No. 86 Civ. 4790, 1993 WL 247821 (S.D.N.Y., June 30, (continued...)

with respect to the last count under which petitioner was convicted, that, for purposes of section 7206(1), petitioner "unlawfully, wilfully and knowingly" made and subscribed his 1975 joint income tax return (Form 1040), which contained and was verified by a written declaration that it was made under penalty of perjury, and which he did not believe to be true and correct as to material matters, to wit, loss and investment tax credit on account of an investment in the Caldwell film development partnership, and income received from Cinepix Establishment.

Petitioner claims that the testimony at the criminal trial (only some of which is available to us) indicates that he was an investor in Caldwell who sublet an office to Murray Glantz, one of the coconspirators, who was the lawyer for Caldwell and who controlled the dummy general partner. Petitioner goes on to claim that Glantz did virtually everything connected with Caldwell and Cinepix, that there was no evidence that petitioner had anything at all to do with the transaction between the sellers and Cinepix, that petitioner had trouble obtaining Caldwell partnership documents from Glantz, that petitioner assisted in the sale of Caldwell interests but was not aware of the inflated purchase price, that petitioner was interested in Caldwell for its profit potential and sold it on that basis to

---

[2](...continued)
1993) (earlier decisions in Zola v. Gordon, 701 F. Supp. 67 (S.D.N.Y. 1988), and 685 F. Supp. 354 (S.D.N.Y. 1988)).

one of the witnesses at the trial, that petitioner initiated an audit of the distributor and a lawsuit against the general partner when the profit was not paid to the partners, and that at trial the prosecutor's argument about Caldwell only referred to witnesses who did not incriminate petitioner on this point, made no effort to prove that petitioner intended to evade tax, and did not prove that petitioner knew that the Caldwell deal was based on an inflated purchase price or otherwise would lead to an evasion of tax. There was evidence at trial that can reasonably be interpreted to support many of these assertions.

On January 21, 1988, respondent sent petitioners two statutory notices, one for 1974 and 1975 and the other for 1973, 1976, 1977, and 1978.[3]  On April 18, 1988, petitioners timely filed their petition with this Court.[4]  When petitioners filed their petition, they resided in Harrison, New York.

## Discussion

---

[3]These notices contained determinations, now conceded by respondent, that petitioner was liable for the fraud addition to tax for all 6 years from 1973 through 1978 (not just for 1975), and also that petitioner had received "profit from movie deals" (i.e., skim income) in 1975 and 1976.

[4]Petitioners' case in this Court was consolidated with those of petitioner's coconspirators and their spouses, but those other cases have since been severed by reason of the comprehensive settlements that have been reached in them, in which, as indicated in the text, supra, the other conspirators have conceded receipts of varying amounts of skim income and fraud additions.

Summary judgment is intended to expedite litigation and avoid unnecessary and expensive trials. American Manufacturers Mut. Ins. Co. v. American Broadcasting-Paramount Theatres, Inc., 388 F.2d 272, 278 (2d Cir. 1967); Boyd Gaming Corp. v. Commissioner, supra at 346; Florida Peach Corp. v. Commissioner, 90 T.C. 678, 681 (1988). Rule 121(a) provides that "Either party may move, with or without supporting affidavits, for a summary adjudication in the moving party's favor upon all or any part of the legal issues in controversy." Summary judgment may be granted with respect to all or any part of the legal issues in controversy "if the pleadings, answers to interrogatories, depositions, admissions, and any other acceptable materials, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that a decision may be rendered as a matter of law." Rule 121(b); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247 (1986); Williams v. Crichton, 84 F.3d 581, 587 (2d Cir. 1996); Sundstrand Corp. v. Commissioner, 98 T.C. 518, 520 (1992), affd. 17 F.3d 965 (7th Cir. 1994); Zaentz v. Commissioner, 90 T.C. 753, 754 (1988); Naftel v. Commissioner, 85 T.C. 527, 529 (1985).

The moving party must prove that there is no genuine issue of material fact, and all factual inferences are viewed in the light most favorable to, and all ambiguities resolved in favor of, the nonmoving party. Eastman Kodak Co. v. Image Technical

Servs., Inc., 504 U.S. 451, 456 (1992); United States v. Diebold, Inc., 369 U.S. 654, 655 (1962); Sierra Club, Inc. v. Commissioner, 86 F.3d 1526, 1530, 1536 (9th Cir. 1996), affg. in part and revg. and remanding in part on this issue 103 T.C. 307 (1994) and affg. T.C. Memo. 1993-199; Gottlieb v. County of Orange, 84 F.3d 511, 518 (2d Cir. 1996); Rosen v. Thornburgh, 928 F.2d 528, 532-533 (2d Cir. 1991); Boyd Gaming Corp. v. Commissioner, supra at 347.  Whether an issue of material fact is genuine depends upon whether a reasonable trier of fact could find in favor of the nonmoving party.  Eastman Kodak Co. v. Image Technical Servs., Inc., supra at 462, 469 & n.14, 477; Anderson v. Liberty Lobby, Inc., supra at 248-252; Atkinson v. Denton Publishing Co., 84 F.3d 144, 148 (5th Cir. 1996); Sutera v. Schering Corp., 73 F.3d 13, 16 (2d Cir. 1995); Richman v. Commissioner, T.C. Memo. 1993-32.  Assessments of credibility, choices between conflicting versions of events, and weighing of evidence are the prerogative of the finder of fact at trial, not matters for summary judgment.  Anderson v. Liberty Lobby, Inc., supra at 255; Rule v. Brine, Inc., 85 F.3d 1002, 1011 (2d Cir. 1996); Big Apple BMW, Inc. v. BMW of N. Am., Inc., 974 F.2d 1358, 1363 (3d Cir. 1992); Toushin v. Commissioner, T.C. Memo. 1995-573.  Because summary judgment decides against a party before trial, we grant the remedy cautiously, only after carefully ascertaining that the moving party has met all the requirements.

Associated Press v. United States, 326 U.S. 1, 6 (1945); P & X Markets, Inc. v. Commissioner, 106 T.C. 441, 443 (1996).

A motion for summary judgment necessarily implicates the burden of proof that would apply at a trial on the merits. Anderson v. Liberty Lobby, Inc., supra at 252; United States v. One Parcel of Property Located at 15 Black Ledge Dr., Marlborough, Conn., 897 F.2d 97, 101 (2d Cir. 1990). Thus, where the moving party has the burden of proof by clear and convincing evidence, his showing must be sufficient for the court to hold that no reasonable trier of fact could find for the nonmoving party. Irby v. Bittick, 44 F.3d 949, 953 (11th Cir. 1995); Calderone v. United States, 799 F.2d 254, 259 (6th Cir. 1986). It follows from these considerations that here, where respondent has the burden of proving all the elements of fraud by clear and convincing evidence and has moved for summary judgment, we grant respondent's motion only if she has met the burden of convincing us that no reasonable trier of fact could find that respondent has failed to prove any of the elements of fraud by clear and convincing evidence. Cf. National Presto Indus. v. West Bend Co., 76 F.3d 1185, 1189 (Fed. Cir. 1996); United States Gypsum Co. v. National Gypsum Co., 74 F.3d 1209, 1212 (Fed. Cir. 1996); Paragon Podiatry Lab., Inc. v. KLM Lab., Inc., 984 F.2d 1182, 1189-1190 (Fed. Cir. 1993); Baker Oil Tools, Inc. v. Geo Vann, Inc., 828 F.2d 1558, 1566 (Fed. Cir. 1987); Target Therapeutics,

Inc. v. SciMed Life Systems, Inc., No. C-94-20775RPA, 1996 WL 241692 (N.D. Cal., May 2, 1996); Fidelity Bank, Natl. Association v. Avrutick, 740 F. Supp. 222, 232 (S.D.N.Y. 1990); Schneider (USA), Inc. v. C. R. Bard, Inc., No. Civ. A. 89-819-MA, 1990 WL 292143 (D. Mass., Oct. 11, 1990); Symbol Technologies, Inc. v. Opticon, Inc., No. 86 CB 8736 (KMW), 1989 WL 38134 (S.D.N.Y., Feb. 27, 1989).

Respondent bases her motion on the allegedly preclusive effect of petitioner's convictions under 18 U.S.C. section 371 (1994) and I.R.C. section 7206(1) and (2) upon the issue of fraud under section 6653(b). Respondent contends that the opinion of the Court of Appeals for the Ninth Circuit in Considine v. United States, 683 F.2d 1285 (9th Cir. 1982), in combination with petitioner's convictions under section 7206(2) and 18 U.S.C. section 371 (1994) and petitioner's status as a sophisticated taxpayer, compels the conclusion that petitioner's conviction establishes as a matter of law that his underpayment for 1975 was "due to fraud," for purposes of section 6653(b), and thus that respondent's motion should be granted. Petitioners contend that the convictions on all these counts might have had nothing to do with receipt of income from an artificially inflated purchase price paid by Caldwell to Cinepix: The conviction for conspiracy could be based on any one of eleven transactions; the convictions under section 7206(2) could be based on aiding and abetting

others to commit the crime of aiding and assisting in the preparation of false returns of others; the conviction under section 7206(1) might have been with respect to unreported income from movie deals, which respondent has conceded petitioner did not have; further, the convictions under section 7206(1) and (2) could be based on nothing more than petitioner's participation in the conspiracy, under Pinkerton v. United States, 328 U.S. 640, 645-647 (1946).

Respondent determined that petitioner was liable for an addition to tax for fraud for 1975 under section 6653(b).  This section imposes an addition to tax equal to 50 percent of any underpayment in tax if any part of the underpayment is due to fraud.  To establish this, respondent must show both:  (1) That the taxpayer has underpaid his taxes for the year in question (existence of underpayment), and (2) that some part of the underpayment is due to fraud (fraudulent intent, intent to evade tax).  DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. on other issues 959 F.2d 16 (2d Cir. 1992); Parks v. Commissioner, 94 T.C. 654, 660-661 (1990); Truesdell v. Commissioner, 89 T.C. 1280, 1301 (1987); Hebrank v. Commissioner, 81 T.C. 640, 642 (1983).  Respondent bears the burden of proving fraud and must carry this burden for each element of fraud by clear and convincing evidence.  Sec. 7454(a); Rule 142(b); DiLeo v.

Commissioner, supra; Parks v. Commissioner, supra; Hebrank v. Commissioner, supra.

A conviction for willful falsification under section 7206(1) does not estop a taxpayer from denying fraud. Wright v. Commissioner, 84 T.C. 636, 643 (1985). In this case, the parties have stipulated that there was an underpayment of tax by petitioners for the taxable year 1975. It follows that the only remaining issue that respondent must prove is that of fraudulent intent.

Petitioners have presented evidence indicating that petitioner received no skim income from the sale of "Adios Amigos" to Caldwell Properties and that he may not have known about the inflated nature of the reported purchase price of the movie. He was not an attorney for Caldwell. Petitioners suggest that the jury may have convicted on the section 7206(1) count because the prosecution convinced it that petitioner had received other film income--which respondent now concedes petitioner did not receive.

None of the counts on which petitioner was convicted, singly or in combination, establishes that petitioner had fraudulent intent. Indeed, the judge at the criminal trial explicitly instructed the jury that it could convict on the section 7206(2) counts whether or not petitioner intended to evade tax, whereas he issued a contrasting instruction on a section 7201 charge

against petitioner's co-defendant Murray Glantz, who was convicted under section 7201, and who has conceded receipt of skim income and liability for the fraud addition. See In re Glantz, 468 N.Y.S.2d 634 (App. Div. 1983). Summary judgment on the tax fraud issue against the taxpayer was affirmed in Considine v. United States, 683 F.2d 1285, but there the taxpayer, offering no evidence or argument that the false statements on his tax return were made with any other intent than to defraud the Government, had not controverted the Government's assertion that he had filed his materially false return with fraudulent intent, id. at 1288. Here, petitioner has adduced evidence and argument that he lacked fraudulent intent. We conclude that this issue presents a factual dispute for trial.[5]

Respondent argues that petitioner's intent to evade tax is evidenced by the fact that he was a sophisticated lawyer and investor, that he was convicted under section 7206(2) of assisting in the preparation of returns that were false and fraudulent, and that he was convicted under 18 U.S.C. sec. 371 (1994) of conspiring with others to defraud the United States.

---

[5]Compare Cimino v. Commissioner, T.C. Memo. 1994-80; Munson v. Commissioner, T.C. Memo. 1991-377; Twist v. Commissioner, T.C. Memo. 1986-497; Siravo v. Commissioner, T.C. Memo. 1986-482; Keeton v. Commissioner, T.C. Memo. 1985-599, in all of which summary judgment as to fraud was granted to respondent based primarily on deemed admissions. In Chermack v. Commissioner, T.C. Memo. 1989-57, also, there were indicia of fraud not present in the case at hand.

The two convictions, however, do not collaterally estop him from denying intent to evade his own tax liability.  Petitioner's sophistication as a lawyer and investor may tend to show that he had such intent, but here, unlike the taxpayer in <u>Considine</u>, petitioner has made a showing in opposition to respondent's motion, and the issue of intent is a triable issue of fact.

We therefore deny respondent's motion for summary judgment.

For the preceding reasons,

<u>An order will be issued</u>

<u>denying respondent's motion</u>

<u>for summary judgment</u>.